CENTRAL SAVINGS AND LOAN AS-
SOCIATION OF CHARITON,
IOWA et al., Plaintiffs,

v.

FEDERAL HOME LOAN BANK
BOARD et al., Defendants.

FIRST FEDERAL SAVINGS AND LOAN
ASSOCIATION, CARROLL,
IOWA, Plaintiff,

v.

FEDERAL HOME LOAN BANK
BOARD et al., Defendants.

CENTRAL SAVINGS AND LOAN AS-
SOCIATION OF CHARITON,
IOWA et al., Plaintiffs,

v.

UNITED FEDERAL SAVINGS AND
LOAN ASSOCIATION OF DES
MOINES, IOWA, Defendant.

Civ. Nos. 8-2178-C-1, 8-2204-C-1,
8-2179-C-1.

United States District Court
S. D. Iowa,
Central Division.

Nov. 20, 1968.

A. Arthur Davis, Donald A. Wine, and John D. Shors, Des Moines, Iowa, for plaintiffs.

Shirley A. Webster, Winterset, Iowa, for plaintiff Farmers and Merchants State Bank.

R. H. Werner, per se, Creston, Iowa, for plaintiff R. H. Werner.

Walter Ward Reynoldson, Osceola, Iowa, for plaintiff Clark County State Bank.

G. Arthur Minnich, Jr., Carroll, Iowa, for plaintiff First Federal Savings and Loan Assn.

Alan Jay Moscov, Gen. Counsel, Max Wilfand, Deputy Gen. Counsel, Paul E. McGraw, Assoc. Gen. Counsel, and Daniel J. Goldberg, Asst. Gen. Counsel, Office of Gen. Counsel, Federal Home Loan Bank Bd., Washington, D. C., for defendants, Home Loan Bank Bd.

Joseph A. Muldoon, Jr., Washington, D. C., and Henry Grant, Harvey Bogenrief, Des Moines, Iowa, and Pierson, Ball & Dowd, Washington, D. C., for defendant United Federal Savings and Loan Assn. of Des Moines, Iowa.

## MEMORANDUM AND ORDER

STEPHENSON, Chief Judge.

This matter is now before the Court on the motions of the defendants to dismiss for failure to state a claim upon which relief can be granted, and for other reasons. The three actions herein have been consolidated by order of this Court dated July 12, 1968, and the motions of all defendants will be considered together.

Civil Nos. 8–2178–C–1 and 8–2204–C–1 are actions for declaratory and mandatory injunctive relief filed by eleven plaintiffs (five state chartered commercial banks, a director of one of these banks, two federal savings and loan associations, a director of another federal savings and loan association, and two state chartered savings and loan associations) against the Federal Home Loan Bank Board (Board), and the individual members of the Board. The Board is an

independent agency of the United States, which is responsible, among other things, under the statutory power conferred upon it by section 5(a) of the Home Owners' Loan Act of 1933, as amended, 12 U.S.C.A. § 1464(a), (Act), for the organization, supervision and regulation of federal savings and loan associations.

The original complaints sought: (1) judicial review of the Findings, Opinion and Order of the Board, dated February 27, 1968, which both authorized the establishment and operation of the mobile facility by United Federal Savings and Loan Association of Des Moines, Des Moines, Iowa (United Federal), and denied a petition by certain of the plaintiffs for the repeal of the Board regulation providing for mobile facilities by federal savings and loan associations, section 545.14–4 of The Rules and Regulations for the Federal Savings and Loan System (12 C.F.R. 545.14–4), prescribed by the Board under the Act (12 U.S.C. § 1461 et seq.); (2) a judgment that the Board's mobile facility regulation is illegal, invalid and void, and the issuance of a mandatory injunction directing the Board and its members to rescind such regulation; and (3) a declaration that the Board order authorizing a mobile facility for United Federal is illegal, invalid and void, and the issuance of a mandatory injunction directing the Board and its members to rescind such order.

Civil No. 8–2204–C–1 was originated by a complaint filed on April 10, 1968, in the United States District Court for the Northern District of Iowa. Upon motion of all parties, that case was transferred to this Court by order dated June 4, 1968. Civil No. 8–2179–C–1 is identical to Civil No. 8–2178–C–1, except that United Federal is the named defendant, and an additional count seeks injunctive relief against United Federal under the antitrust laws.

On May 22, 1968, the plaintiffs in Civil Nos. 8–2178–C–1 and 8–2204–C–1 amended their complaint to add, among other things, a claim for money damages for injuries to them caused by the refusal of the Board to stay implementation of its order authorizing the establishment and operation of a mobile facility by United Federal.

Defendants' motions to dismiss allege that: (1) the plaintiffs have failed to state any claim upon which relief may be granted; (2) the Court lacks jurisdiction of all of the alleged causes of action asserted against the Board by the plaintiff banks and the directors thereof, and by the plaintiff state chartered savings and loan associations, because Congress has not given its consent to suit against the Board, *eo nomine*, by any person or entity other than a federally chartered savings and loan association or an officer or director thereof; (3) the plaintiff banks and the directors thereof lack standing to sue the Board or its members; and (4) the Court lacks jurisdiction of the causes of action of all the plaintiffs with respect to claims for money damages against the Board or its members.

A hearing was held on defendants' motions August 19–20, 1968, at which time affidavits and other matters outside the pleadings were presented to and received by the Court. In addition the parties were granted time to, and did, file additional affidavits. Accordingly the motions to dismiss will be treated as motions for summary judgment. Fed.R.Civ. P. 12(b).

Section 545.14–4 of The Rules and Regulations for the Federal Savings and Loan System ("section 545.14–4") provides for the establishment and operation of mobile facilities by federal savings and loan associations. This regulation, as amended, became effective on July 24, 1967.

A mobile facility, in essence, is a self-propelled or vehicular-towed facility which is driven to specified locations, approved in advance by the Board, for the purpose of extending savings and loan services to communities which are not otherwise provided with such services locally. Section 545.14–4 specifies the requirements as to each proposed location for the mobile facility, and sets forth standards which the mobile operations

must meet. Each proposed location must be within the state in which the applicant's home office is located, within the applicant's regular lending area, and, at the time of the filing of the application, must be at least ten miles from the location of the home or any branch office of all other institutions with accounts insured by the Federal Savings and Loan Insurance Corporation. An applicant must agree to operate its mobile facility at two or more qualified locations, and with respect to each location such facility must be open for business on the same day or days (not to exceed two days) of each week, aggregating a total of not less than four hours per day. The regulation precludes the mobile equipment from remaining at any location while such facility is not open for business, except that the equipment may be placed at any approved location on the night before and the night following a day on which the facility is open for business. Subject to the foregoing restrictions, the regulation permits the days and hours for business at each approved location to be set by the applicant's board of directors.

Assuming compliance with the eligibility requirements and regulatory standards of section 545.14–4, the Board is required to determine, as to each proposed location, that there is a "need" for such mobile facility, and that a full-time office is not feasible there. Once approved, any regular savings and loan business of the applicant authorized by its board of directors may be conducted at each approved location except for the approval of loans other than loans to borrowers on the security of their savings.

By application dated November 14, 1966, United Federal sought permission to establish and operate a mobile facility at eleven locations within the State of Iowa. A public hearing was held in Washington, D. C., May 8–22, 1967. The plaintiffs in the present litigation, along with other protestants, appeared at the hearing through counsel in opposition to the application of United Federal. All parties to the proceeding were given an opportunity to present evidence, state their views and to file briefs in support of their respective positions.

Certain of the protestants to the application of United Federal, including many of the plaintiffs in the present case, petitioned the Board to repeal section 545.14–4. The Board permitted these protestants to file briefs in support of their petition and granted oral argument on said petition.

Upon consideration of the matter, the Board issued its Findings, Opinion and Order, dated February 27, 1968, denying the petition to repeal section 545.14–4, and granting permission for United Federal to establish and operate a mobile facility for a period of three years at three of the eleven locations sought. The Board found that there was a "need" for the mobile facility at the three approved locations and that it was not feasible for United Federal to establish a full-time office in these communities. The Board determined that there was no "need" for a mobile facility in seven of the communities sought and therefore denied permission for the establishment of a mobile facility therein. The Board also found that it was feasible to establish a full-time office in the final community involved and denied United Federal's application on that basis.

■■■■ The Board raises the issue of standing to sue as to certain of the plaintiffs. It is well settled that the United States may not be sued without its consent, and that a suit against an agency of the Government is a suit against the United States. Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952). Consent to suit against the United States may be granted only by Congress. United States v. Finn, 239 F.2d 679 (9th Cir. 1956). The only express waiver of immunity from suit found in the Act is located in section 5(d) (1), which reads in part:

* * * the Board shall be subject to suit (other than suits on claims for money damages) by any Federal savings and loan association or direc-

tor or officer thereof * * *. 12 U.S.C.A. § 1464(d) (1).

Prior to October 16, 1966, this section read as follows:

> * * * The Board shall have the power to sue and be sued, complain and defend in any court of competent jurisdiction in the United States * *.

■ This change clearly indicates an intent on the part of Congress to limit its consent to suit against the Board to federal savings and loan associations and officers and directors thereof. Chase Sav. & L. Ass'n v. Federal Home Loan Bank Bd., 269 F.Supp. 965 (E.D.Pa.1967). Consequently defendant Board's motion for summary judgment in Civil No. 8–2178–C–1 must be granted against the five plaintiff banks,[1] the two plaintiff chartered savings and loan associations,[2] and Gerald W. Clause.

Nor does the Administrative Procedure Act, 5 U.S.C. § 551 et seq., grant these plaintiffs standing to sue. There is no specific authorization in the A.P.A. for suit against the Board as an entity, and the A.P.A. is not to be deemed an implied waiver of all governmental immunity from suit. Blackmar v. Guerre, supra.

■ It is also clear that the amendment to 12 U.S.C.A. § 1464(d) (1) indicates an intent by Congress that the Board not be liable for money damages, regardless of who the plaintiff might be. S.Rep. 1482, 89th Cong., 2d Sess., reprinted in 1966 U.S.Code Cong. & Admin.News, pp. 3532, 3541. Consequently summary judgment will be entered against all plaintiffs on their claim for money damages against the Board.

■ Plaintiffs first seek a declaration that section 545.14–4 is illegal, invalid and void. It is abundantly clear that the Act, as amended granted authority to the Board, incidental to its expressly conferred statutory power to organize, charter and regulate such associations, to permit federal savings and loan associations, regularly chartered, to establish branch offices. North Arlington Nat. Bank v. Kearny Fed. Sav. & L. Ass'n, 187 F.2d 564 (3d Cir. 1951), cert. denied, 342 U.S. 816, 72 S.Ct. 30, 96 L. Ed. 617 (1951). It is argued, however, that the Board has no authority to authorize mobile branches because at the time section 545.14–4 was adopted there were no mobile facilities being operated by any local mutual thrift and home financing institution in the United States. This claimed limitation on the Board's power is based primarily on plaintiff's construction of section 5(a) of the Act, 12 U.S.C.A. § 1464(a), which reads as follows:

> In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations,' and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States.

The use of the word "primary" in the statute necessarily indicates that the Board was also to be guided by considerations other than existing "best practices." It can hardly be argued that the Board was to adopt those existing practices which were not "best practices." The inescapable conclusion is that the Board, in the exercise of its special expertise in the area, was to institute

---

1. Clarke County State Bank, Osceola, Iowa; Farmers and Merchants State Bank, Winterset, Iowa; Union State Bank, Winterset, Iowa; Home State Bank, Jefferson, Iowa; Jefferson State Bank, Jefferson, Iowa.

2. Central Savings and Loan Association of Chariton, Iowa; Insurance Plan Savings and Loan Association, Mt. Pleasant, Iowa.

practices it felt advisable even where the states had failed to act.

Plaintiffs further allege that the adoption of section 545.14–4 is outside of the purpose of the Act in that such a facility is not a "local" mutal thrift and home financing institution. Plaintiffs rely on the dictionary definition of "local" and "community" to support their claim. The same argument was advanced in opposition to the regulation authorizing federal savings and loan associations to establish branches. North Arlington Nat. Bank v. Kearny Fed. Sav. & L. Ass'n, supra. The Court of Appeals for the Third Circuit rejected this argument, and stated:

> We think this latter argument is pretty well neutralized by the provision in section 1464(c) * * * about security. The associations are to lend their funds, with certain exceptions, either on their own shares or 'on the security of first liens upon homes or combinations of homes and business property within fifty miles of their home office.' It seems to us that this shows the legislative concept of 'local' and 'community' better than reference to the dictionary, for the purpose of this case. 187 F.2d at 565.

The primary lending area of federal savings and loan associations has since been extended to one hundred miles, but the principle remains valid. The Court fails to see why a branch office would be "local" to the approved communities while a mobile facility would not be so considered. In both instances, a savings and loan association with its home office and management in Des Moines would be extending identical savings and loan services to outlying communities which are without such services. As stated in First Nat. Bank of McKeesport v. First Fed. Sav. & L. Ass'n of Homestead, 96 U.S.App.D.C. 194, 225 F.2d 33 (1955):

> It seems reasonable, once a federal association is established under the grant of an original charter and able to make loans within a [one hundred-mile] radius of the home office, that

the question of the establishment of branches should be committed to agency discretion.

In addition, the regulation specifically requires that the applicant show that it is not feasible to establish a full-time office at any of the proposed locations. One purpose of the Act is to extend savings and loan services to communities which are without such services. Since the Act requires that no institution be chartered unless there is a reasonable probability of its success, 12 U.S.C.A. § 1464(e), it would seem that section 545.14–4 advances the purposes of the Act, rather than violates them.

Third, plaintiffs allege that section 545.14–4 is invalid because the criteria for the establishment of a mobile facility are not the same as those specified in section 5(e) of the Act. 12 U.S.C.A. § 1464(e). This section, as amended, provides:

> No charter shall be granted except to persons of good character and responsibility, nor unless in the judgment of the Board a necessity exists for such an institution in the community to be served, nor unless there is a reasonable probability of its usefulness and success, nor unless the same can be established without undue injury to properly conducted existing local thrift and home-financing institutions.

It will be noted that this section refers simply to "charters," and governs the Board's consideration of an application for the grant of a charter to establish an "institution." A mobile facility, however, is not an "institution" and does not require a charter, its establishment being of an entirely different character. As stated above, this Court believes that once an institution is established under the grant of an original charter, the establishment of branches and mobile facilities is committed to the discretion of the Board.

■ Next the plaintiffs contend that the Board's grant of authority to operate

a mobile facility to United Federal is illegal, invalid and void. In this regard, plaintiffs first claim that the Board acted arbitrarily, capriciously and unreasonably in granting United Federal authority to operate its mobile facility in only three locations when all evidence indicated that this facility could not succeed financially unless it were to visit at least five of the proposed locations. The record of the hearing is not before the Court, but it will be presumed that plaintiffs' statement as to the evidence regarding financial feasibility is correct.

Nothing in the Act or the regulation requires that the applicant for a mobile facility make a showing of probability of financial success. Section 5(e) of the Act, supra, does require such a showing for an initial charter, but as discussed above, the granting of a mobile facility is an entirely different matter. The concern of the Board is for the "need" within each community for such a facility. In addition, the regulation states that no application will be approved if the Board finds that the policies, condition, or operation of the applicant "afford a basis for supervisory objection to the application." 12 C.F.R. 545.14–4(e). The Board had no such objection. It obviously recognized that the representations made concerning the need for five or six locations were made to persuade the Board to approve a maximum number of locations. The granting of authorization to operate a mobile facility does not bind the applicant to operate such a facility. The Board granted approval of three locations and left it to the management of United Federal to determine whether it would be economically feasible to operate the facility in only those locations. This does not amount to an abuse of the discretion of the Board. Rather it would be an abuse of discretion for the Board to grant United Federal five locations based on these representations when only three communities were shown to have a "need" for a mobile facility.

Plaintiffs further allege that the Board's grant of authority to United Federal to operate a mobile facility is invalid because the hearing officer who presided over the hearing on United Federal's application refused to allow testimony by certain of plaintiffs' witnesses with respect to harm to the communities involved as a result of a mobile facility. Initially, it is abundantly clear that decisions with respect to applications for charters, branches, agencies and similar matters relating to federal savings and loan associations are committed to the exclusive discretion of the Board. The Board is not required to hold an adjudicative hearing prior to exercising its authority in such matters. Bridgeport Fed. Sav. & L. Ass'n v. Federal Home Loan Bank Bd., 307 F.2d 580 (3rd Cir. 1962); Federal Home Loan Bank Bd. v. Rowe, 109 U.S.App.D.C. 140, 284 F.2d 274 (1960). When the Board does hold a hearing on an application such as that of United Federal, such hearing is not required to be and is not conducted pursuant to the provisions of the Administrative Procedure Act, 5 U.S.C. § 551 et seq. Bridgeport Federal Sav. & L. Ass'n v. Federal Home Loan Bank Bd., supra; Federal Home Loan Bank Bd. v. Rowe, supra.

Such a hearing is held for the specific purpose of obtaining certain particular information desired by the Board in connection with the application before it. As stated in *Bridgeport,*

The Federal Home Loan Bank Board is an agency which has been granted a broad discretion by the Congress in its disposition of applications of the type involved. The rulings of the Board are the result of its expert judgment, its policy, the reports, recommendations and analyses of its staff, plus any special evidence it might conclude necessary to obtain by way of hearing. Congress recognized that if this agency was to really operate successfully in the huge area of public service to which it is assigned, it needed wide discretionary

powers in its day to day practical decisions and granted the Board that authority. 307 F.2d 580, 584.

■ Basically plaintiffs' arguments relating to the granting of authority to operate a mobile facility in this case go to the question of whether there is a "need" for such a facility in the communities involved. This is a matter committed to the exclusive discretion of the Board, and this Court may not substitute its judgment for that of the Board.

Plaintiffs' amended complaint in Civil Nos. 8–2178–C–1 and 8–2204–C–1, asks damages against the Board and the individual members thereof in the amount of $20,000 to the date of the amendment plus $100 per day since that date for failure to stay operation of the mobile facility. Since it has been determined that the authorization granted to United Federal to operate its mobile facility was lawfully granted, it is clear that this claim is not one upon which relief may be granted, and summary judgment will be entered against the plaintiffs.

■ Finally, plaintiffs allege that the mobile facility will permit United Federal to monopolize competition in the central Iowa area, in violation of the Clayton Act, 15 U.S.C.A. § 15 et seq., and the Sherman Antitrust Law, 15 U.S.C.A. §§ 1–3. In accordance with 12 C.F.R. 545.14–4, the Board has determined that there was a need for savings and loan services in the three communities, and that a full-time branch or agency was not feasible. In addition, the grant of authority to operate the facility is for a period of only three years, after which the Board must make a re-evaluation of the communities involved to determine whether there has been a change in circumstances. Implicit in the determination of need for the facility is a determination that there is no unlawful monopoly. The Board did not abuse its discretion in authorizing the mobile facility for the three communities.

■ Further plaintiffs allege that United Federal applied to the Board for permission to merge with Ottumwa Federal Savings and Loan Association, Ottumwa, Iowa, and that such merger would result in a violation of these acts. It is well settled that the merger application, standing alone, would not be a violation of the antitrust laws. Eastern Railroad Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); Bracken's Shopping Center, Inc. v. Ruwe, 273 F.Supp. 606 (S.D.Ill.1967). The merger application awaits action by the Board. The Board is empowered, under Section 5(a) of the Act, to authorize mergers of federal savings and loan associations, and has adopted regulations thereunder prescribing the procedure to be followed in applying for a merger. 12 C.F.R. § 546.2.

It is therefore ordered that the motion of defendants Federal Home Loan Bank Board, John E. Horne, Michael Greenbaum and Robert L. Rand for summary judgment be and the same is hereby granted. Summary judgment shall enter in favor of said defendants in Civil Nos. 8–2178–C–1 and 8–2204–C–1, dismissing this cause. Costs are assessed to the plaintiffs.

It is further ordered that the motion of defendant United Federal Savings and Loan Association of Des Moines for summary judgment be and the same is hereby granted. Summary judgment shall enter in favor of said defendant in Civil No. 8–2179–C–1, dismissing this cause. Costs are assessed to the plaintiffs.