**BLOOMFIELD FEDERAL SAVINGS AND LOAN ASSOCIATION, BLOOM-FIELD, NEBRASKA, et al., Plaintiffs,**

**v.**

**AMERICAN COMMUNITY STORES CORPORATION, d/b/a Hinky Dinky, et al., Defendants.**

**Civ. No. 74-0-146.**

United States District Court, D. Nebraska.

June 11, 1975.

Frank R. Gailor, Washington, D. C., D. Nick Caporale, Omaha, Neb., for plaintiffs.

Daniel J. Goldberg and Harvey Simon, Washington, D. C., for defendants Federal Home Loan Bank and Board Members.

John W. Delehant, Omaha, Neb., for defendant American Community Stores.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court encompassing the plaintiffs' motion for summary judgment on the fifth claim of

the First Amended Complaint (Filing # 32). Also under consideration at this time is the motion of the defendants, Federal Home Loan Bank Board and the Board Members, for summary judgment on the second, fourth and fifth claims of the First Amended Complaint (Filing # 45). Vociferous oral argument was presented to the Court embracing the motions delineated above on January 31, 1975, (Filing # 48).

Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 (1970), and 5 U.S.C. §§ 701–06 (1970), in that the matter in controversy exceeds the sum of $10,000.00, exclusive of interest and costs, and that the matter arises under the Constitution and laws of the United States, and that the matter in controversy in part constitutes "agency action" within the meaning of 5 U.S.C. § 701 (1970) and pursuant to §§ 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26 (1970), in that plaintiffs have allegedly been injured in their business and property by violations of the antitrust laws.

Pursuant to Rule 56 of Fed.R.Civ.P., the Court finds that there are no genuine issues of material fact embraced within the second, fourth and fifth claims of the First Amended Complaint and that such claims are appropriate for adjudication on summary judgment.

■ The Court has painstakingly examined and studied each brief submitted on the matter in issue. Additionally, the Court has attempted to stay abreast of judicial and legislative developments on a national and local level encompassing similar matters. However, the inherent characteristics of this case substantially due to unforeseen technological advances uncontemplated by the "Home Owners' Loan Act of 1933", 12 U.S.C. § 1461 et seq., and due to the initiative taken by the defendants in stimulating the financial activity of federal savings and loan associations, compel

this trial Court to address the legal issues exhibited herein as matters of first impression. While the Court has the discretion under Rule 52 of the Fed.R.Civ. P. to decide motions for summary judgment in the absence of documentation of findings of fact and conclusions of law, the facts and conclusions of law critical to this Court's decision have been delineated herein.

## SUMMARY JUDGMENT ON THE SECOND CLAIM OF THE FIRST AMENDED COMPLAINT

■ The Second Claim of the plaintiff's Amended complaint (Filing # 20) asserts that the defendant Bank Board adopted § 545.4–2 (12 C.F.R. § 545.4–2) of the Rules and Regulations for the Federal Savings and Loan System and amended such regulation on June 26, 1974, without authority pursuant to § 5 of the Home Owners' Loan Act of 1933 (12 U.S.C. § 1464). This regulation authorized the implementation by federal savings and loan associations of electronic funds transfer systems.[1] An analysis of Section 5(a), supra, clearly indicates that Congress conferred upon the Federal Home Loan Bank Board the plenary and exclusive authority over the operations of federal savings and loan associations. ". . . the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations', . . . ." (12 U.S.C. § 1464(a)).

An examination of the Court decisions scrutinizing the scope of the Board's authority evinces the wide range of discretion and power residing within this agency. *California v. Coast Federal Savings & Loan Association*, 98 F.Supp. 311, 316 (S.D.Cal.1951); *North Arlington National Bank v. Kearny Federal Savings & Loan Association*, 187 F.2d

---

1. The term "electronics funds transfer systems" includes and encompasses place-of-business funds transfer systems and "remote service units" as expanded upon within the contents of this Memorandum.

564 (3rd Cir. 1951); *Bridgeport Federal Savings & Loan Association v. Federal Home Loan Bank Board,* 307 F.2d 580 (3rd Cir. 1962); *Central Savings & Loan Association of Chariton, Iowa v. Federal Home Loan Bank Board,* 293 F. Supp. 617 (S.D.Iowa 1968), aff'd, 422 F.2d 504 (8th Cir. 1970); *Federal Home Loan Bank Board v. Rowe,* 109 U.S.App.D.C. 140, 284 F.2d 274 (1960). The Board in the case at bar did not "by its interpretation of the statute under which it operates increase its power beyond that given by the legislative body . . . ." *North Arlington National Bank v. Kearny Federal Savings and Loan Association, supra.* Rather, the action taken in this case by the Board is reflective of the Congressional recognition "that if this agency was to really operate successfully in the huge area of public service to which it is assigned, it needed wide discretionary powers in its day to day practical decisions and granted the Board that authority. . . ." *Bridgeport Federal Savings & Loan Association v. Federal Home Loan Bank Board, supra,* 307 F.2d at 584. A meditative and comprehensive examination of the very purpose of the Board discloses that this agency must act in view of tomorrow, as it did in this case.

The "public service" tendered in the regulation under consideration permits the utilization of a remote service unit [2] at one of the American Community Stores (Hinky Dinky), thereby facilitating an account holder's access to his savings account at First Federal Savings & Loan Association of Lincoln. Customer service is substantially enhanced by eliminating the inconvenience incident to making a deposit or withdrawal "in person" at an association's office, avoiding the delay incident to transacting business by mail, and enabling the account holder to have access to his account at the association after regular business hours. Critical to the analysis of these transactions is the judicial recognition that the element of a debtor and creditor essential to any deposit or withdrawal of funds never exists between the store and the customer-depositor. The "customer" is transacting business with First Federal Savings & Loan Association of Lincoln through the use of a computer terminal in the store, and the actions of the store facilitate that transaction. The computer terminal is the conduit for the *relay of information* to a central computer at First Federal. The transactions are electronically effected and perfected by the computer on the records and premises of First Federal. At no

2. The term "remote service unit" means an *information processing* device, including associated equipment, structures and systems, by means of which information relating to financial services rendered to the public is stored and transmitted, whether instantaneously or otherwise, to a financial institution and which, for activation and account or deposit access, is dependent upon the use of a machine-readable instrument in the possession and control of the holder of such account or deposit. The term "remote service unit" includes, without limitation, both "on-line" computer terminals and "off-line" cash dispensing machines, but does not include terminals or teller machines using passbooks regardless of whether the passbooks are machine-readable. A remote service unit is not a branch office, satellite office or other type of office, facility of agency of a Federal association, within the meaning of 545.14, 545.14–1, 545.14–2, 545.14–3, 545.-14–4, 545.14–5 or 545.14–6.

Paragraph (b) of the new 545.4–2 authorizes a Federal association to render one or more of the following financial services to the public by means of a Board-approved RSU:

(1) The placing or transferring of funds to the credit of savings accounts or deposits at such association, but no savings accounts or deposits may be opened at such a unit;

(2) Withdrawals of savings accounts or deposits in such association, which withdrawals may be total or partial . . . ;

(3) Receiving payments related to loans invested in or being serviced by such association: *Provided,* that in no case may applications for or approvals of loans be made at a remote service unit; and

(4) Such other related financial services, except those services specifically prohibited by this paragraph (b), as the Board may approve upon application therefor.

time does First Federal have possession or ownership of any cash or funds physically transferred on the store premises between the store and the customer. The store is the financial and operational medium between the "customer" and First Federal.

The statute (12 U.S.C. § 1464) under which the Federal Home Loan Bank Board derives its authority is one of the type which states a policy, provides for the promulgation of the regulations under consideration and their implementation, lays down some general rules and leaves the details to the Board. *North Arlington National Bank v. Kearny Federal Savings & Loan Association, supra,* 187 F.2d, at 565. The Court must accede to the proposition that the Board, in allowing limited experimentation in the field of "electronic funds transfer systems", was neither operating beyond the scope of its authority nor in an arbitrary and capricious manner, but, rather, was adopting new regulations in the area statutorily committed to the exclusive discretion of the Board by "which people may invest their funds and in order to provide for the financing of homes." (12 U.S.C. § 1464(a)). Intrinsic to the authority and function of the Board, is the power to initiate, adopt, and institute the best practices of mutual thrift and home-financing institutions. *Central Savings & Loan Association of Chariton, Iowa v. Federal Home Loan Bank Board, supra,* 293 F.Supp., at 621, 622. In this case, the utilization of remote service units merely allows *existing* savers access to their accounts at the association and only modifies the mode of transmitting deposit or withdrawal instructions. The utilization of this communication system is not the functional equivalent of a check or negotiable instrument, but rather the machine readable instrument which is used by the account holder to gain access to his accounts in conjunction with information supplied to the operator is functionally equivalent to a deposit or withdrawal slip. The Board, by regulation, has provided "for the withdrawal or transfer of savings accounts upon nontransferable order or authorization", and has not transmuted savings accounts into demand deposits. (12 U.S.C. § 1464(b)(1)).

Upon examination of the purposes and objectives of the Federal Home Loan Bank Board in the exercise of its special expertise, the Court finds that the Federal Home Loan Bank Board has the statutory authority to adopt regulations encompassing the use of electronic funds transfer systems as implemented herein. (12 C.F.R. § 545.42).

## SUMMARY JUDGMENT ON THE FOURTH CLAIM OF THE FIRST AMENDED COMPLAINT

■ The Fourth Claim of the plaintiffs' First Amended Complaint asserts that "each terminal which the defendant First Federal operated constitutes a branch office, and yet the defendant Bank Board did not follow the procedural requirements, including notice to competitors, provided for in §§ 545.14 and 556.5 of the Rules and Regulations for the Federal Savings and Loan System" (Filing # 20, page 7).

Under the applicable provision of the National Bank Act (12 U.S.C. § 36(c)), there is a direct Congressional mandate that the Comptroller of the Currency may permit the establishment and operation of new branches by "national banks" within the limits of the community where a national bank is located only if such establishment and operation are at the time expressly authorized to state banks by the law of the state in question. However, the courts have repeatedly held that this section is inapplicable to the Board's approval of branches for federal associations. *North Arlington National Bank v. Kearny Federal Savings & Loan Association, supra.* Only where a state has expressed an outright hostility to branching or affiliating so strong that no state financial institution is permitted to do anything comparable to branching will the Board not authorize "branching." *Lyons Sav-*

*ings & Loan Association v. Federal Home Loan Bank Board,* 377 F.Supp. 11 (N.D.Ill., 1974) ; 12 C.F.R. § 556.5.

At this juncture, it is important to expose Section 8–355, Neb.Rev.Stat.1943 (Cum.Supp.1974), which provides:

> Federal savings and loan; associations organized under laws of Nebraska; rights, privileges, benefits and immunities; exception:

Notwithstanding any of the provisions of Chapter 8, article 3, or any other Nebraska statute, any association incorporated under the laws of the State of Nebraska and organized under the provisions of such article shall have all the rights, powers, privileges, benefits, and immunities which may be exercised as of July 12, 1974 by a federal savings and loan association doing business in Nebraska; *Provided,* that such rights, powers, privileges, benefits and immunities shall not relieve such association from payment of state taxes assessed under any applicable laws of this state. Effective date July 12, 1974.

A crucial factor ultimately lurking within this issue is the definition of "branching" as applied to federal savings and loan associations. Congress has not defined "branching" in the area of federal savings and loan associations, but has left it to the Board's discretion to determine by regulation what constitutes a "branch." *Bridgeport Federal Savings & Loan Association v. Federal Home Loan Bank Board, supra,* 307 F.2d at 584; *North Arlington National Bank v. Kearny Federal Savings & Loan Association, supra,* 187 F.2d at 565; *First National Bank of McKeesport v. First Federal Savings & Loan Association of Homestead,* 96 U.S.App.D.C. 194, 225 F.2d 33, 35 (1955). The Board's regulation encompassing the definition of a branch states that a branch is a full-time and permanent office at which *any business* of a federal association may be transacted. 12 C.F.R. § 545.14. A remote service unit allows an account holder to transmit a communication that his funds be transferred. The regulation

prohibits the use of the remote service unit for opening savings accounts or deposits, or for the origination, processing or approval of any loans. *A remote service unit is then only a means of communication which permits the funds transfer function to be effectuated on the premises of First Federal.*

The plaintiffs contend, as a critical element of their case, that the Board has not obeyed its own office location regulations in authorizing such "RSU's." Section 545.14 of the Federal Regulations of the Board governs only the establishment of branch offices by federal savings and loan associations. The criteria outlined therein, according to this Court's examination, would not be applicable to remote service units due to the sui generis characteristics of this means of communication. The uniqueness of this regulation (§ 545.4–2) is further reflected in the temporary status it has as a "pilot project."

## *SUMMARY JUDGMENT ON THE FIFTH CLAIM OF THE FIRST AMENDED COMPLAINT*

■■ The Fifth Claim of the plaintiffs' First Amended Complaint contends that the account of Hinky Dinky at First Federal was in a deficit position from time to time due to excessive deposits by customers at Hinky Dinky stores. Hence, the plaintiffs propound that the defendant First Federal has made unsecured loans to Hinky Dinky in violation of § 5(c) of the Home Owners' Loan Act of 1933, as amended, and 12 C.F.R. § 545.6, and/or has credited customers with funds not paid to it, also in violation of governing statutes and regulations.

The affidavits of Vern Roschewski dated January 29, 1975 (Filing # 54) and October 24, 1974 (Filing # 53), recount the background information which brings into perspective the allegations of the plaintiffs on this claim. Mr. Roschewski, as Treasurer of First Federal Savings and Loan Association of Lincoln, had the personal knowledge of the

status of Hinky Dinky's account at all material times herein.

Hinky Dinky initially deposited $25,000.00 in its account at First Federal as a funds source upon which transfers could be effectuated between Hinky Dinky and a customer-account holder utilizing the electronic funds transfer system installed in the two Hinky Dinky stores in Lincoln, Nebraska. When a customer-account holder deposited funds into his own account at a terminal within a Hinky Dinky store, the computer debited the amount deposited from the account of Hinky Dinky at First Federal and the same amount was credited to the depositor's account at First Federal. During the forty-six (46) day period from January 14, 1974, through March 1, 1974, the account of Hinky Dinky reflected a negative balance on six (6) days, occasioned on each date by "net" deposits to individual savings accounts exceeding the balance in Hinky Dinky's account. (January 31, February 1, 7, 8, 11 and 12, 1974). While the negative balances occurred on six (6) days, said balances actually represented three short-term periods extending from the afternoon on one day to the morning hours on the succeeding day. (Affidavit, Filing # 53).

A critical element of this pilot project embracing the temporary deficits is the backup procedure for the period January 14, 1974 to March 1, 1974, that authorized First Federal, under a pre-authorized draft agreement, to draw checks, drafts or other fund transfers against demand funds of Hinky Dinky to automatically and instantaneously effect payment of funds to First Federal.

It is to be noted, however, that First Federal implemented an effective procedure at the time of the deficit balances of requesting and receiving checks from Hinky Dinky in amounts necessary to restore a credit balance to the Hinky Dinky account on the mornings of February 1, 8 and 12, 1974. The backup procedure later utilized with the remote service units in September, 1974, provides First Federal with authority to draw pre-authorized drafts on its account with the Omaha National Bank, Omaha, Nebraska, in $10,000.00 multiples and in unlimited quantities. The operator at the First Federal computer center maintains an hourly monitor and log to assure that a minimum balance of not less than $25,000.00 is maintained at all times in the Hinky Dinky account. In addition, no deposit of $10,000.00 or more can be processed without the manual assistance of the computer center operator at the home office of First Federal. In this Court's analysis, the combination of these controls eliminates any possibility of a negative balance occurring in the Hinky Dinky account as of September 16, 1974, when the remote service units went into operation.

The plaintiffs seek a declaration from this Court that the operation of the system which created a deficit balance on the six (6) days in question was violative of the Home Owners' Loan Act of 1933. The request for injunctive relief is clearly inappropriate, due to the likelihood of a deficit balance occurring in the future. *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Walling v. Buettner & Co.*, 133 F.2d 306, 308 (7th Cir. 1943), cert. denied 319 U.S. 771, 63 S.Ct. 1437, 87 L.Ed. 1719. While this Court explicitly refrains from considering the legality of First Federal's act of "covering" the deficit balance in Hinky Dinky's account on several occasions, the Court must confront the standing of the plaintiffs to raise this issue and the present effect on the rights of the litigants if a declaration were made.

Upon consideration of the cross-motions for summary judgment on the Fifth Claim, it is this Court's firm opinion that the plaintiffs have failed to exhibit standing to contest the conduct of Hinky Dinky in maintaining a temporary deficit balance in its account with First Federal. *Sierra Club v. Morton*, 405 U.S. 727, 734–735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *United States v. S. C. R. A. P.*, 412 U.S. 669, 93 S.Ct.

2405, 37 L.Ed.2d 254, 270 (1973); *Independent Investor Protective League v. S. E. C.*, 495 F.2d 311, 312 (2nd Cir. 1974). Even if the plaintiffs were found to have standing on a claim of this nature, the Court would not be in a position to render an opinion, since the issue of a deficit balance would no longer affect the rights of the litigants under the backup procedure presently being utilized. *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895); *Amalgamated Association of St. Elec. Ry. & Motor Coach Employees of America, Division 998 v. Wisconsin Employment Relations Bd.*, 340 U.S. 416, 418, 71 S.Ct. 373, 95 L.Ed. 389 (1951). It is therefore the Court's finding that summary judgment shall be found in favor of the defendants on this Fifth Claim.