CENTRAL SAVINGS AND LOAN ASSO-
CIATION OF CHARITON, IOWA,
et al., Appellants,

v.

FEDERAL HOME LOAN BANK BOARD
et al., Appellees.

CENTRAL SAVINGS AND LOAN ASSO-
CIATION OF CHARITON, IOWA,
et al., Appellants,

v.

UNITED FEDERAL SAVINGS AND
LOAN ASSOCIATION OF DES
MOINES, IOWA, Appellee.

FIRST FEDERAL SAVINGS AND LOAN
ASSOCIATION, Carroll, Iowa,
Appellant,

v.

FEDERAL HOME LOAN BANK BOARD
et al., Appellees.

Nos. 19614–19616.

United States Court of Appeals,
Eighth Circuit.

Feb. 25, 1970.

John D. Shors and A. Arthur Davis, Des Moines, Iowa, for appellants; Donald A. Wine, Des Moines, Iowa, Shirley A. Webster, Winterset, Iowa, R. H. Werner Creston, Iowa, Walter Ward Reynoldson, Osceola, Iowa, and G. A. Minnich, Jr., Carroll, Iowa, on the briefs.

Edward F. Sloane, of Sloane & Muldoon, Washington, D. C., for appellee United Federal Savings and Loan Assn. of Des Moines; Joseph A. Muldoon, Jr., Washington, D. C., on the brief.

Daniel J. Goldberg, Asst. Gen. Counsel, Federal Home Loan Bank Bd., Washington, D. C., for Federal Home Loan Bank Bd.; Arthur W. Leibold, Jr., Gen. Counsel, Max Wilfand, Deputy Gen. Counsel, Paul E. McGraw, Assoc. Gen. Counsel, Federal Home Loan Bank Bd., on the brief.

Before MATTHES, BLACKMUN and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

When the Federal Home Loan Bank Board authorized United Federal Savings and Loan Association of Des Moines, Iowa (United Federal) to utilize a mobile savings and loan facility (essentially an office mounted on wheels) to provide its services to three Iowa communities, several competitors brought civil actions for injunctive and declaratory relief to negate the exercise of such authority. In two actions against the Federal Home Loan Bank Board (Board) and its members, plaintiffs, state-chartered commercial banks, a director of one of them, two state savings and loan associations, two federal savings and loan associations, and a director of a third, sought to invalidate the regulations and the order under which the Board had authorized United Federal to furnish such services. In a third action similar relief on similar grounds was sought against United Federal and as an additional basis for an injunction these plaintiffs alleged that United Federal, in seeking to operate the mobile facilities and in seeking to merge with another Iowa Federal savings and loan association, had violated the Sherman Anti-Trust Law and the Clayton Act, 15 U.S.C. § §1 et seq., 15 et seq.

The trial court consolidated these actions and, thereafter, in response to defendants' motions to dismiss, treated as applications for summary judgment (per Fed.R.Civ.P. 12(b), 56), entered judgments dismissing all of the actions. Plaintiffs appeal from these judgments.

Appellants do not dispute an initial determination of the trial court that only federal savings and loan associations and their officers possess standing to sue the Board. See 12 U.S.C. § 1464(d) (1). The standing of these plaintiffs, as well as the appeal on the separate anti-trust allegations, suffice to enable us to review all issues raised. 12 U.S.C. § 1464(d) (1); 15 U.S.C. § 26; 28 U.S.C. § 1291.

The trial court in an opinion reported as Central Savings and Loan Association of Chariton, Iowa v. Federal Home Loan Bank Board, 293 F.Supp. 617 (S.D.Iowa 1968), determined that United Federal possessed lawful and proper authority to provide savings and loan services through a mobile facility. The court also determined that the appellants' complaint for violation of the anti-trust laws failed to state a proper claim for relief.

We agree with Judge Stephenson's opinion and affirm for the reasons he

has advanced, together with our amplification of them.

Appellants essentially claim:

(1) that the Board exceeded its statutory authority in promulgating the regulations relating to the use of mobile facilities;

(2) that the Board acted arbitrarily and capriciously in granting United Federal authority to provide such savings and loan services to three Iowa communities; and

(3) that United Federal's proposed operation of mobile facilities together with its proposed merger with a similar association violate the federal anti-trust laws.

■ The underlying statute here pertinent reads:

"In order to provide *local mutual thrift institutions* in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such *rules and regulations* as it may prescribe, *to provide for the organization, incorporation, examination, operation, and regulation* of associations to be known as 'Federal Savings and Loan Associations', and to issue charters therefor, *giving primary consideration to the best practices* of local mutual thrift and home-financing institutions in the United States." (Emphasis added.) 12 U.S.C.A. § 1464(a).

Appellants focus their attack on the language of the statute which requires that in promulgating regulations, the Board give "primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States".

The parties concede that no local mutual thrift and home-financing institution in the United States utilized mobile facilities at the time the Board adopted the regulation authorizing their use.[1] On this predicate appellants argue that the Board possessed no authority under the "best practices" clause of the statute to promulgate any regulation authorizing the use of mobile facilities. In rejecting this argument, Judge Stephenson said:

"The use of the word 'primary' in the statute necessarily indicates that the Board was also to be guided by considerations other than existing 'best practices.' It can hardly be argued that the Board was to adopt those existing practices which were not 'best practices.' The inescapable conclusion is that the Board, in the exercise of its special expertise in the area, was to institute practices it felt advisable even where the states had failed to act." 293 F.Supp. at 621–622.

Our acceptance of appellants' posture of equating best practices with only existing practices would unduly restrict the thrust of the broad, general language of the statute which lays down general rules and prohibitions, but which leaves details to the Board. North Arlington National Bank v. Kearny Federal Savings & Loan Association, 187 F.2d 564, 565 (3rd Cir.), cert. denied, 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617 (1951). Certainly that statutory language does not bind the Board inexorably to existing and past practices of local mutual thrift and home-financing institutions. Further, the concept of "best practices" includes changing, modifying or adapting existing practices to new conditions. The Board, by regulations, since 1934 has permitted savings and loan associations to operate branch offices. 12 C.F.R. § 545.14(a). A mobile facility offers the same services as a branch, but on a limited and part-time basis. Compare 12 C.F.R. § 545.14(a) (1) with § 545.14–4(b) (5). No radical concept underlies the placing of wheels under a structure so as to constitute an office capable of moving from place to place. The utility and sensibility of a traveling office as a method for providing limited

---

1. The mobile facilities regulation was adopted on December 17, 1965, and became effective on January 23, 1966. See 12 C.F.R. § 545.14–4.

savings and loan services needed by a small community would seem rather obvious. In the context of the federal banking law the United States Supreme Court holds that mobile facilities in which deposits are received and checks cashed serves as a "branch" of the bank which operates it. First National Bank in Plant City, Fla. v. Dickinson, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969).

The mere fact that savings and loan associations and other similar institutions did not utilize mobile facilities at the time the regulation was adopted by the Board does not void the institution of this new practice adapted from prior experience. Accordingly, we hold the regulation to be within the purview of the underlying statute.

The appellants also specifically attack the mobile facilities regulation as being outside the purposes of the Act, urging that such facilities are inherently "non-local" to the communities they serve. Judge Stephenson, on the reasoning of North Arlington National Bank v. Kearny Federal Savings & Loan Association, *supra*, and First National Bank of McKeesport v. First Federal Savings and Loan Association, 96 U.S.App.D.C. 194, 225 F.2d 33 (1955), rejected this contention. Savings and loan asociations may loan funds upon real property "within one hundred miles of their home office * * *." 12 U.S.C. § 1464(c). Operations within this primary lending area preserve the institution's local character.

■ As still another prong of appellants' attack they assert that local communities will sustain harm by services furnished through a mobile facility. They support this contention by an affidavit of the Iowa Commissioner of Banking, who states " * * * such a facility will harm the communities which it visits * * *." The statement in this affidavit raises no factual issue. The ultimate effects of the operation of mobile facilities, be they beneficial or detrimental, fall within the scope of those issues statutorily committed to the exclusive discretion of the Board.

See Bridgeport Federal Savings and Loan Association v. Federal Home Loan Bank Board, 307 F.2d 580 (3rd Cir. 1962), cert. denied, 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499 (1963); Federal Home Loan Bank Board v. Rowe, 109 U.S.App.D.C. 140, 284 F.2d 274 (1960); First National Bank of McKeesport v. First Federal Savings and Loan Association, *supra*.

■ In requesting authority from the Board to serve eleven Iowa communities United Federal asserted service could feasibly be furnished to as few as five or six communities. The Board consented to service for three. Given these circumstances, appellants pled that the Board acted arbitrarily and capriciously in authorizing services to so few communities. Appellants argue that we must take the pleaded facts to be true and conclusive and that they serve to establish that the Board acted outside its authority.

However, our examination of the findings, opinion and order of the Board— which are part of the record in this case, as well as the pleadings—discloses that the Board considered the interrelationship of various factors relating to each subject community such as size, population, wealth, income, home construction, rental units, purchasing power, school enrollment, banks, home loans, location of other savings and loan institutions and a myriad of other details. We feel that the record conclusively demonstrates that the Board considered facts relevant to the criteria it had established by its regulations. Apart from a bare statement of conclusion in their pleadings, appellants demonstrate no factual or legal basis which suggests that the Board acted in an arbitrary or illegal manner. The trial court properly determined as a matter of law on the record before it that the Board acted within its discretionary powers. See Webster Groves Trust Co. v. Saxon, 370 F.2d 381 (8th Cir. 1966); Citizens Bank of Hattiesburg v. Camp, 387 F.2d 375 (5th Cir. 1967), *cert. denied,* 391 U.S.

904, 88 S.Ct. 1652, 20 L.Ed.2d 418 (1968).

■■■ Finally, appellants urge that United Federal will monopolize the savings and loan business in central Iowa by its proposed mobile facility operations and by merger with another savings and loan association.[2] In our view, their complaint, although replete with sweeping conclusions, fails to present any factual basis for the monopoly charge.[3]

As stated in Hiland Dairy, Inc. v. Kroger, 402 F.2d 968 (8th Cir. 1968), cert. denied, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969), an unlawful at-

---

2. The Board must approve such a merger. 12 U.S.C. § 1464(d) (11); 12 C.F.R. § 546.2. Its action remains pending.

3. Pertinent portions of the complaint allege:

"This action is also brought pursuant to the Clayton Act and the Sherman Antitrust Law of the United States (15 U.S.C. Sections 1 et seq., 15 et seq.)

"Each and every one of the acts herein alleged to have been done by the defendant or for which defendant has requested permission of the Federal Home Loan Bank Board has resulted or will result in the restraining of interstate commerce in the Southern District of Iowa and elsewhere and has tended to and will tend to and actually has imposed and will impose an unreasonable restraint on interstate commerce in violation of said antitrust laws.

"United Federal Savings and Loan Association has obtained permission from the Federal Home Loan Bank Board to operate a mobile facility in certain towns in the Southern District of Iowa, namely, Winterset, Osceola and Jefferson.

"The operation of mobile facilities by United Federal Savings and Loan will draw money available for savings from in and about Osceola, Winterset and Jefferson.

"United Federal's mobile facility will prevent the establishment of local mutual thrift associations in and about the aforesaid communities.

"United Federal will be allowed to compete unfairly with local institutions in the area which institutions are required to make more substantial economic investments in their communities than will United Federal with its mobile facility.

"Said mobile facility will substantially foreclose competition in said areas through the prevention of the establishment of said new local mutual thrift associations and through unfair competition and will allow United Federal to monopolize in said areas, the relevant geographical area being Central Iowa.

"United Federal Savings and Loan Association now has application before the Board to merge with Ottumwa Federal Savings and Loan Association of Ottumwa, Iowa.

"United Federal and Ottumwa Federal Savings and Loan Association now compete in the area between them.

"United Federal also made application for mobile facilities in Pella, Albia, Centerville and Sigourney.

"Said application was denied as to those towns.

"United Federal has evidenced the intention to resubmit its mobile application.

"The relevant geographical area consists of Monroe and Wapello Counties.

"Ottumwa Federal Savings and Loan Association now compete in said geographical area.

"United Federal presently has substantial savings from Monroe County and Wapello County. Ottumwa Federal Savings and Loan Association also has substantial savings from Wapello County and Monroe County.

"The merger of said Ottumwa Federal and United Federal will substantially lessen competition in the relevant geographical area.

"The said proposed merger and the said mobile application evidence an intent on the part of said United Federal to monopolize and substantially foreclose competition.

*　　*　　*　　*　　*

"The savings and loan associations and corporate petitioners are faced with the economic decline of their communities and with imminent competition through use of mobile facilities by said proposed facility of United Federal Savings and Loan Association of Des Moines, Iowa.

*　　*　　*　　*　　*

"WHEREFORE, plaintiffs demand that the Court adjudge the granting of said mobile facility illegal, invalid and void and enjoin the defendant from operating a mobile facility thereunder, from carrying out its attempts to merge in Ottumwa, and that costs be assessed against defendant."

tempt to monopolize presupposes a "dangerous probability" of monopolization, see American Tobacco Co. v. United States, 328 U.S. 781, 785, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946), as well as a specific intent evidenced by conduct or acts from which that intent can be inferred. See Union Leader Corp. v. Newspapers of New England, Inc., 284 F.2d 582 (1st Cir. 1960), cert. denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961). The appellants point to the proposed merger and the mobile facilities applications as conduct evidencing that intent. Generally, however, solicitation of governmental action in accordance with a valid regulatory scheme for the sake of obtaining an economic or competitive advantage is not prohibited by the anti-trust laws. See Eastern Railroad Presidents Conference v. Noerr Motors Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939).

Further, the determination of "need" which must underlie the authorization for the operation of mobile facilities does not suggest necessary impairment of competition. Indeed, at least parts of the complaint voice an objection to United Federal utilizing a mobile facility to compete with financial institutions already located in and serving this area. In addition, we note that mobile facilities, like branches, represent a favored form of internal rather than external expansion and as such, present only minimum conflicts with the anti-trust laws. See United States v. Philadelphia National Bank, 374 U.S. 321, 370, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963). But see United States v. Aluminum Co. of America, 148 F.2d 416 (2d Cir. 1945).

The Home Owners' Loan Act of 1933 does not specifically exempt federal savings and loan associations from the application of anti-trust laws and we here do not imply such an exemption. See United States v. Philadelphia National Bank, 374 U.S. at 348, 83 S.Ct. 1715, 10 L.Ed.2d 915; California v. Federal Power Commission, 369 U.S. 482, 485, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962).

We reiterate that the failure to specify facts showing any acts or intent to monopolize competition as distinguished from sheer conclusions requires our affirmance of the trial court's disposition of the appellants' anti-trust claim. See Hiland Dairy, Inc. v. Kroger, *supra;* McCleneghan v. Union Stock Yards Co. of Omaha, 298 F.2d 659 (8th Cir. 1962).

In reviewing the trial court's entry of summary judgment and the contentions of the parties, we have afforded the appellants all favorable inferences of fact that might be drawn from the pleadings and affidavits. See Traylor v. Black, Sivalls & Bryson, Inc., 189 F.2d 213 (8th Cir. 1951); Walling v. Fairmont Creamery Co., 139 F.2d 318 (8th Cir. 1943). However, the trial court faced only issues of law, which it properly resolved.

Affirmed.