**ELM GROVE SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

v.

**FEDERAL HOME LOAN BANK BOARD et al., Defendants.**

No. 72–C–305.

United States District Court, E. D. Wisconsin.

March 3, 1975.

Quarles & Brady by David E. Jarvis, Milwaukee, Wis., Howard E. Halaska of

Halaska, Schalmo & Janis, Elm Grove, Wis., for plaintiff.

Daniel J. Goldberg, Associate Gen. Counsel, Harold B. Shore, Asst. Gen. Counsel, Harvey Simon, Roland L. Marcotte, Jr., Attys., Washington, D. C., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This is an action by Elm Grove Savings and Loan Association against the Federal Home Loan Bank Board, and its individual members, to set aside board resolution No. 72–116, dated January 27, 1972. The resolution authorized Milwaukee Federal Savings and Loan Association to establish and maintain a branch office at or near the Brookfield Square Shopping Center.

The defendant board has moved for summary judgment. Meanwhile, the plaintiff seeks an order compelling discovery in these proceedings for judicial review. I have examined the administrative record as well as the arguments which have been advanced by counsel. I conclude that the plaintiff's discovery motion should be denied and that the defendants' motion for summary judgment should be granted.

At the outset, it should be noted that on December 28, 1972, Milwaukee Federal converted from a federal charter to a Wisconsin state charter and changed its name to Great Midwest Savings and Loan Association. According to the defendants, therefore,

> "a serious question arises as to whether this conversion has rendered this controversy moot, since the Board may not have any authority to order the State-chartered association to close down the branch office at issue herein, even though permission to establish that office was granted while the association was a Federal association."

In a letter dated January 24, 1973, however, the Wisconsin commissioner of savings and loan indicated that while

> "the conversion of Milwaukee Federal Savings and Loan Association from a federal to a state charter was done in conformity with Section 215.29 [Wis. Stats.] . . . [t]he branch office of the converting association now under challenge must stand or fall under the terms of the federal regulations under which it was approved and authorized. I fail to see that state laws governing branching by state chartered associations is relevant."

█ Thus, it is apparent that even though Milwaukee Federal has converted from a federal to a state-chartered savings and loan association, the Wisconsin state regulatory agency has not granted its stamp of approval to the branch office. Should this court rule that the branch office was improperly approved under federal regulations, the state will apparently abide by that determination. In my judgment, therefore, the instant case presents a justiciable case or controversy and is not moot.

In Camp v. Pitts, 411 U.S. 138, 93 S. Ct. 1241, 36 L.Ed.2d 106 (1973), the United States Supreme Court set forth the standard for review which is applicable in this case. It specifically rejected the substantial evidence test as the standard of review of administrative decisions with respect to the issuance of national bank and federal savings and loan charters in favor of the less stringent rational basis test. In Winnetka Savings and Loan Association et al. v. Home Federal Savings and Loan Association of Chicago et al., F.Supp. (N.D. Ill., 1975), slip opinion at p. 6, the district court stated the appropriate test as follows:

> "the question on review is whether there is at least *'some evidence' in the record* to support the agency's decision. So long as there exists *some rational basis* for the agency's action, it may not be upset on review. [citations omitted] . . . Only in the absence of any such basis can the court make a finding of arbitrary and capricious action by the Board." (emphasis supplied)

In Camp v. Pitts, 411 U.S. 138, 93 S. Ct. 1241, 36 L.Ed.2d 106 (1973), the Supreme Court further held that the reviewing court is not "free to hold a de novo hearing." 411 U.S. at 141, 93 S.Ct. at 1243. Rather, it observed at p. 142, at p. 1244 of 93 S.Ct. that

> "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court . . ."

▄▄▄ It is clear, therefore, that "branching" cases such as the one at bar should be resolved by means of summary judgment and that the district judges' inquiry is limited to consideration of the existing administrative record before the Board. First National Bank of Crown Point v. Camp, 463 F.2d 595, 599–600 (7th Cir. 1972).

▄▄▄ As the district court observed in National Petroleum Refiners Ass'n et al. v. F. T. C., 392 F.Supp. 1052 (D.D.C., case number 1180–71, decided June 17, 1974), slip opinion at p. 5:

> "The Commission's [decision] will stand or fall on the basis of the administrative record herein. . . . If on reviewing the merits of this action the Court should find the record inadequate the possibilities include invalidation of the [decision] or remand for supplementation of the administrative record. In no event, however, does the court foresee the type of *de novo* trial rejected in Camp [v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed. 2d 106 (1973)] nor the probing of the mental processes of decision makers abjured in [Citizens to Preserve] Overton Park [v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)].
>
> "Plaintiffs will have ample opportunity to demonstrate the weakness of the present record. The absence of discovery need not limit judicial review. Discovery here is neither required nor necessary."

For the foregoing reasons, I conclude that the discovery sought by the plaintiffs—which consists of a number of interrogatories aimed at isolating the particular facts relied upon by the board in this case—is inappropriate. See Montrose Chemical Corporation of California v. Train, 160 U.S.App.D.C. 270, 491 F.2d 63, 68–69 (1974); Compare United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

Federal regulations provide that the approval of a federal savings and loan branch application is contingent upon a showing by the applicant that (1) there is a necessity for the proposed branch in the community to be served by it; (2) there is a reasonable probability of the usefulness and success of the proposed branch; and (3) the proposed branch will not cause undue injury to existing local thrift and home financing institutions. 12 C.F.R. 545.14(c) (1971).

▄▄▄ The plaintiff asserts that the board's resolution approving Milwaukee Federal's branch application failed "to provide an intelligible basis upon which review can be based" because it contains conclusory language and does not "set forth any facts upon which it is based." However, the board is not required to issue findings of fact, conclusions of law or an opinion explaining its branching application decisions. Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). Moreover, as the court of appeals for the third circuit observed in Bridgeport Federal Savings & Loan Ass'n v. Federal Home Loan Bank Board, 307 F.2d 580 (3rd Cir. 1962), at 584:

> "The Federal Home Loan Bank Board is an agency which has been granted a broad discretion by the Congress in its disposition of applications of the type involved. . . . Congress recognized that if this agency was to really operate successfully in the huge area of public service to which it is assigned, it needed wide discretionary powers in its day to day practical decisions and granted the Board that authority. . . ."

See also Central Savings & Loan Ass'n of Chariton, Iowa v. Federal Home Loan Bank Board, 293 F.Supp. 617 (S.D.Iowa, 1968), aff'd 422 F.2d 504 (8th Cir. 1970).

It should be noted that at the administrative level Elm Grove did not object to the establishment of a new Milwaukee Federal branch located *inside* the Brookfield Square Shopping Center which would primarily serve its customers and employees. In fact, at the oral argument before the board's supervisory agent, counsel for Elm Grove stated that the one existing savings and loan association serving the shopping center had "very little" effect upon Elm Grove. See the transcript of oral argument, p. 37.

What the plaintiff did object to was the presence of a Milwaukee Federal branch across the street from the shopping center rather than within the enclosed shopping mall. Elm Grove argued that it would be injured by such a new branch because such branch would not attract business from persons using the shopping center but would serve only local residents already being served by the plainitff and other existing service area savings and loan facilities. See transcript of oral argument, pp. 29–44, 55. Whether it was located inside the shopping mall in question or across the street therefrom, in my judgment the board could reasonably conclude that a new Milwaukee Federal branch would service the customers and employees of that regional shopping mall.

■ Significantly, the governing regulatory test is not mere "injury" to the plaintiff but "undue injury." In focusing on this criteria, the board was required to balance any possible injury to the plaintiff against the benefit to the residents of the developing service area, and to persons using the regional shopping center, from an additional savings and loan facility. See Guaranty Savings & Loan Ass'n v. Federal Home Loan Bank Board, 330 F.Supp. 470 (D.D.C. 1971).

■ I have reviewed the administrative record. In my judgment there exists ample evidence to support the reasonableness of the board's decision to allow the establishment of the branch office in question. Such determination cannot be characterized as an arbitrary or capricious one.

Therefore, it is ordered that the plaintiff's motion to compel the defendants to answer interrogatories be and hereby is denied.

It is also ordered that the defendants' motion for summary judgment be and hereby is granted.

It is further ordered that this action be and hereby is dismissed.